******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STARBOARD FAIRFIELD DEVELOPMENT, LLC, ET AL. *v.* WILLIAM C. GREMP ET AL.
## (AC 41546)

DiPentima, C. J., and Keller and Prescott, Js.

*Syllabus*

The plaintiffs, S Co. and R Co., sought to recover damages arising out a dispute over real estate investments and the disentanglement of business relationships with the defendants, G and G Co. The plaintiffs brought counts against the defendants sounding in vexatious litigation, breach of a general release benefitting S Co. and its individual members, slander of title, intentional interference with a contract pertaining to certain property, breach of a fiduciary duty, and breach of a promissory note. Following a trial to the court, the trial court rendered judgment in part for the plaintiffs, form which the defendants appealed to this court. *Held*:

1. The defendants' claim that the trial court improperly determined that they breached a general release with S Co. by pursuing a civil action against the plaintiffs was not reviewable; the defendants failed to brief their claim adequately, as their brief was utterly devoid of any citations to or analysis of applicable contract principles or case law that supported their claim, let alone any application of law to the facts of the case.

2. The defendants could not prevail on their claim that the trial court improperly found that they slandered R Co.'s title to certain property by filing a lis pendens and an affidavit of fact pertaining to that property on certain land records; the trial court, as the trier of fact, was free to discredit evidence provided by G at trial that a reasonable and good faith belief existed for his claim of ownership of R Co., which equated to an interest in the property, and having thoroughly reviewed the defendants' arguments on appeal, this court was not persuaded that the trial court's finding of a slander of title was either legally incorrect or factually unsupported.

3. The defendants could not prevail on their claim that the trial court improperly found that they intentionally interfered with R Co.'s contract to sell certain property to a third party: although the defendants baldly stated that the trial court's finding that they acted intentionally and with bad faith to interfere with the property sale was erroneous, they failed to brief that argument beyond mere abstract assertion, and the defendants' claim that there was insufficient evidence for the trial court to find that their interference caused any actual loss lacked merit, as the defendants failed to address the additional attorney's fees and costs incurred, focusing entirely on the escrow funds and arguing only that the escrow could not be a basis for establishing an actual loss, and the loss the court attributed with respect to the escrow funds had nothing to do with the establishment of the escrow or the original purpose for the funds but, rather, concerned R Co.'s inability to utilize those funds because they remained in the escrow account due to the actions of the defendants; moreover, the defendants' claim that the court improperly awarded R Co. interest on a certain amount that R Co. was forced to hold in escrow due to the defendants' actions also failed.

4. The defendants' claim that the trial court improperly awarded punitive damages without providing them with adequate notice of a hearing in accordance with the rules of practice was unavailing; the defendants failed to demonstrate that their due process rights were violated or that the trial court committed reversible error in calculating the amount of punitive damages, as the record demonstrated that the defendants had ample notice of the hearing on punitive damages, attended the hearing, and were afforded a meaningful opportunity to be heard on the merits, and the trial court record having contained a proper notice of the hearing date, the defendants had notice of the hearing and knew that the purpose of the hearing would be to determine the amount of common-law punitive damages.

Argued October 7—officially released December 24, 2019

Action for, inter alia, the defendants' alleged breach of contract, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the plaintiffs served the defendants with notice of application for a prejudgment remedy; thereafter, the defendants filed counterclaims against the plaintiffs; subsequently, the matter was tried to the court, *Radcliffe, J.*; judgment in part for the plaintiffs, from which the defendants appealed to this court; thereafter, a hearing in damages was held before the court, *Radcliffe, J.*, which awarded damages to the plaintiffs, and the defendants filed an amended appeal. *Affirmed.*

*John I. Bolton*, with whom, on the brief, was *Peter V. Lathouris*, for the appellants (defendants).

*Colin B. Connor*, with whom, on the brief, was *Robert D. Russo, III*, for the appellee (plaintiffs).

*Opinion*

PRESCOTT, J. In this action arising out of a dispute over real estate investments and the disentanglement of business relationships, the defendants William C. Gremp and W C Gremp, LLC (WCG)[1] appeal, following a bench trial, from the judgment of the trial court rendered in favor of the plaintiffs, Starboard Fairfield Development, LLC (Starboard), and RR One, LLC (RR One), on counts alleging breach of a general release, slander of title, intentional interference with a contractual relationship, and breach of a promissory note.[2] On appeal, the defendants claim that the court improperly (1) determined that they breached a general release with Starboard by pursuing a civil action against the plaintiffs, (2) found that they slandered RR One's title to certain property by recording a lis pendens and an affidavit of fact pertaining to that property on the Bridgeport land records, (3) found that they intentionally interfered with RR One's contract to sell the property to a third party, (4) awarded RR One interest on $5000 that RR One was forced to hold in escrow due to the defendants' actions, and (5) awarded punitive damages without providing the defendants with adequate notice of a hearing in accordance with Practice Book §§ 7-5, 14-7, and 14-20. After a careful review of the record and the briefs of the parties, we conclude that the defendants' claims are either inadequately briefed or wholly unpersuasive on the basis of the record presented, and, accordingly, we affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to the defendants' claims. In 2010, Gremp organized RR One as a limited liability company with himself as its sole member. As of 2012, RR One was the record owner of two rental properties in Bridgeport. One property is a seven unit, multifamily residence located on a corner lot at 90 Adams Street and 175-77 Newfield Avenue (Newfield property). The other property is composed of three residential units and is located at 188-90 Deacon Street (Deacon property).

In October, 2012, Starboard and WCG, another limited liability company with Gremp as its sole member, executed documents to amend RR One's operating agreement. Pursuant to the amended operating agreement, Starboard, which made a capital contribution of $99,000, owned 99 percent of the newly constituted RR One, and WCG owned the remaining 1 percent on the basis of a capital contribution of $1000. The operating agreement further provided that no member of RR One was entitled to claim any individual interest in any of the property owned by RR One. After the agreement was executed, Gremp served as property manager for the Deacon and Newfield properties.

In 2015, RR One agreed to sell the Deacon property to Gremp for $140,000. RR One signed a sales contract on November 13, 2015, and Gremp signed the contract on November 15, 2015. Gremp planned to obtain a mortgage of $119,000 to help fund the purchase of the Deacon property. In January, 2016, the parties executed an addendum to the sales contract for the Deacon property. The addendum provided in relevant part: "[RR One] shall provide [Gremp] with title in a form that complies with [Gremp]'s mortgage requirements. Specifically, should lender require title to remain with [RR One], [RR One] agrees to transfer 100 [percent] ownership of [RR One] to [Gremp] provided [RR One] disposes of the Newfield property prior to any such transfer of ownership." The addendum also provided that RR One would pay Gremp for certain outstanding management fees that were in dispute.

Prior to the closing on the Deacon property, Attorney Tyisha Toms, who represented Gremp, and Attorney Bill Gouveia, who represented RR One, discussed the mechanics of the transfer of title. Gouveia drafted a document that, if duly executed, would have assigned Starboard's membership interest in RR One to Gremp in the event that Gremp was unable to obtain financing. Two days before the closing date for the Deacon property, however, Gremp obtained a mortgage.

To obtain his mortgage, Gremp provided the lender with a copy of the 2010 operating agreement that listed Gremp as the sole member of RR One. Gremp, however, failed to inform the lender that the 2010 agreement had been superseded by the 2012 operating agreement. He did not provide the lender with a copy of the sales contract for the Deacon property and failed to disclose to the lender that he intended to purchase and take title to the property individually rather than on behalf of RR One. As the trial court explained, "[t]hrough these machinations, Gremp secured monies based on a mortgage on [the Deacon property] in the name of [RR One], an entity in which his interest was 1 percent under the 2012 agreement. He then used the mortgage proceeds to induce [RR One] to convey title to the [Deacon] property to [himself] individually." In other words, "unbeknownst to [RR One] and [Starboard], which owned 99 percent of [RR One], Gremp financed the purchase of [the Deacon property] with monies obtained from a mortgage on [the Deacon property] in the name of his grantor, [RR One]." Gremp negotiated the mortgage in RR One's name without any aid from his attorney, Toms, and without her knowledge.

At the closing on January 22, 2016, Gremp took title to the Deacon property in his name individually. Because Gremp had been able to secure financing, the assignment of ownership of RR One that Gouveia had prepared as a contingency plan was not needed and never was delivered to Gremp or his attorney.

In connection with the closing of the Deacon property, Gremp executed a general release on behalf of himself and WCG to the benefit of Starboard and its individual members.[3] Under the terms of that release, Gremp and WCG waived all rights, "past, present or future . . . connected with, related to, or arising from ownership, right to purchase, management or other involvement" in RR One or the Newfield property, which RR One was under contract to sell to a third party, 175 Newfield Avenue, LLC, for $315,000. Gremp further agreed to "cooperate with the sale of [the Newfield property]." The release, which was signed only by Gremp, both individually and in his capacity as manager of WCG, also contained the following language: "The undersigned agree that the transfer of [RR One] takes effect December 31, 2015."[4]

Despite having released any and all claims with respect to the Newfield property, in March, 2016, Gremp and WCG commenced a lawsuit against Starboard and its individual members seeking, inter alia, compensatory damages for an alleged breach of the RR One operating agreement and to temporarily and permanently enjoin the sale of the Newfield property to anyone other than Gremp (March, 2016 action). In conjunction with the March, 2016 action, Gremp and WCG also recorded a lis pendens on the Bridgeport land records. Following an evidentiary hearing on March 30, 2016, the court, *Wenzel, J.*, denied the application for a temporary injunction, finding that Gremp and WCG had failed to demonstrate that they were subject to any irreparable harm or that they had a probability of success on the merits of any of their alleged causes of action. Following the court's refusal to grant a temporary injunction, Gremp and WCG withdrew the March, 2016 action and recorded a release of the lis pendens.

On March 31, 2016, Gremp sent the individual members of Starboard an e-mail indicating that, although he remained interested in purchasing the Newfield property himself and continued to believe that he had a case for monetary damages, he would cooperate in the sale of the Newfield property to a third party. That same day, however, Gremp filed an "Affidavit of Fact" on the Bridgeport land records claiming that he owned 100 percent interest in RR One. Gremp later contacted the attorney for the third party buyer of the Newfield property, to whom he again misrepresented the extent of his ownership of RR One and indicated that he might be able to obtain the Newfield property through litigation.

The sale of the Newfield property from RR One to the third party buyer closed on April 13, 2016. Proceeds in the amount of $5000 were placed in an escrow account pursuant to an indemnity agreement between RR One and the third party that required RR One to remove any encumbrances on the property and to hold the third party harmless for damages arising from any

suit or demand related to any encumbrance.

On May 11, 2016, the plaintiffs commenced the action underlying the present appeal. The operative second revised complaint contained six counts. Counts one and two were brought by Starboard against Gremp and WCG, and alleged, respectively, vexatious litigation and breach of their general release benefitting Starboard and its individual members. Count six was brought by Starboard against Gremp and alleged breach of a promissory note.[5] Counts three and four were brought by RR One against Gremp and WCG and alleged slander of title and intentional interference with a contract pertaining to the Newfield property. Count five was brought by both plaintiffs against WCG and alleged a breach of fiduciary duty. WCG and Gremp asserted numerous special defenses, including fraud, promissory estoppel, waiver, and accord and satisfaction. They also filed counterclaims alleging two counts of breach of contract against Starboard, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and unjust enrichment against both plaintiffs.

On February 23, 2018, following a trial to the court, the court issued a memorandum of decision. The court found in favor of the defendants on counts one and five of the complaint, but in favor of the plaintiffs on the remaining four counts. The court further ruled in favor of the plaintiffs on the defendants' counterclaims, concluding without elaboration that the defendants had "failed utterly to establish any of the four counts [pleaded] . . . ." The court awarded Starboard $10,082.50 in damages on the basis of Gremp and WCG's breach of their general release and $2819.99 plus interest of 10 percent per year for Gremp's breach of the promissory note. The court awarded RR One the $5000 that remained in the escrow account plus 5 percent interest per year running from the closing date of the Newfield property. The court also found that RR One was entitled to recover common-law punitive damages based on it having prevailed on the slander of title and intentional interference counts.

The defendants filed a motion to reargue and for reconsideration, which the court denied on March 22, 2018. On April 10, 2018, the defendants filed the present appeal from the court's February 23, 2018 judgment.[6] A hearing was held on August 13, 2018, to determine the amount of punitive damages. The court awarded $35,000 in punitive damages, and the defendants amended their appeal to challenge that decision.

Before turning to the defendants' claims on appeal, we briefly set forth the applicable standard of review. "In a case tried [to the] court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable con-

struction in support of the [decision] to which it is entitled. . . . Moreover, we do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Citation omitted; internal quotation marks omitted.) *Aldin Associates Ltd. Partnership* v. *Hess Corp.*, 176 Conn. App. 461, 484–85, 170 A.3d 682 (2017).

As previously indicated, the defendants have raised five claims of error on appeal. None of these claims, which we address in turn, warrants an extensive discussion because they either are inadequately briefed or fail to demonstrate that the court's decision was legally incorrect or factually unsupported.

I

The defendants first claim that the court improperly determined that they breached the general release that they executed in favor of Starboard. This claim fails primarily due to the defendants' inadequate briefing.

The trial court found that Gremp and WCG breached their general release both by commencing the March, 2016 action seeking to enjoin the sale of the Newfield property and by recording a lis pendens and an affidavit of fact on the Bridgeport land records, thereby clouding the title to the Newfield property. The defendants do not dispute that the release they executed constituted a valid, binding contract in which they agreed to cooperate in the sale of the Newfield property and to waive any claims that they had to the property or against Starboard and its members. The defendants' principal argument on appeal focuses on the language in their release that provided that "[t]he undersigned agree that the transfer of [RR One] takes effect December 31, 2015." The defendants describe this as "clear and unambiguous language contained in the general release obligating [the] [p]laintiffs to transfer or assign [RR One] to Gremp . . . ." The defendants contend that they would not have had to initiate the 2016 action or record the lis pendens or affidavit of fact if the plaintiffs had satisfied their own contractual obligations.

If the defendants are claiming that the court was barred as a matter of law from finding them in breach of the general release because the plaintiffs themselves had breached the agreement, the defendants have failed to adequately brief this claim. The defendants' brief is utterly devoid of any citations to or analysis of applicable contract principles or case law that would support their claim, let alone any application of law to the facts of this case. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere]

abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *McClancy* v. *Bank of America, N.A.*, 176 Conn. App. 408, 414, 168 A.3d 658, cert. denied, 327 Conn 975, 174 A.3d 195 (2017).

Further, although the court did not discuss the language at issue in this claim in its memorandum of decision, it did deny the defendants' counterclaim alleging a breach of the release by Starboard, expressly finding that the plaintiffs "did not agree to transfer [RR One] to [Gremp] as claimed by the [d]efendants." The defendants do not challenge the court's ruling on their counterclaims in the present appeal nor do they argue that the court's factual finding was clearly erroneous. Because we conclude that the defendants have failed to adequately brief this claim, we decline to review it.[7]

## II

Next, the defendants claim that the court improperly determined that they slandered RR One's title to the Newfield property by filing a lis pendens and an affidavit of fact on the land records in which Gremp asserts rights to the property. "Slander of title is a tort whereby the plaintiff's claim of title [to] land or other property is disparaged by a letter, caveat, mortgage, lien or some other written instrument . . . . A cause of action for slander of title consists of any false communication which results in harm to interests of another having pecuniary value . . . ." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 202, 931 A.2d 916 (2007). The defendants suggest that, at trial, Gremp "provided colorable evidence that a reasonable and good faith belief existed for his claim of ownership of [RR One], which equated to an interest in [the Newfield property]." The court, however, as the trier of fact, was free to discredit such evidence. See *Langley* v. *Langley*, 137 Conn. App. 588, 598, 49 A.3d 272 (2012). Having thoroughly reviewed the defendants' arguments on appeal, we are not persuaded that the court's finding of a slander of title was either legally incorrect or factually unsupported. Accordingly, this claim fails.

## III

The defendants' third claim is that the court improperly determined that they were liable for intentional interference with RR One's contract to sell the Newfield property to a third-party buyer. We are not persuaded.

"A claim for intentional interference with contractual relations requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4)

that the interference was tortious; and (5) [that there was] a loss suffered by the plaintiff that was caused by the defendant's tortious conduct." *Rioux* v. *Barry*, 283 Conn. 338, 351, 927 A.2d 304 (2007).

Although the defendants baldly state that the court's finding that they acted intentionally and with bad faith to interfere with the Newfield property sale was erroneous, the defendants fail to brief this argument beyond mere abstract assertion. Accordingly, we deem this aspect of the claim abandoned. The remaining aspect of the defendants' claim is that there was insufficient evidence for the court to find that their interference caused any actual loss. That assertion, however, is without merit.

The court found that the "element of actual loss is satisfied, in that [RR One] incurred additional attorney's fees and costs, and lost the use of $5000, which remains in escrow." In challenging this finding, the defendants fail to address the additional attorney's fees and costs incurred, focusing entirely on the escrow funds and arguing only that the escrow could not be a basis for establishing an actual loss because "the $5000 escrow was established for reasons wholly unrelated to any acts of the [d]efendants." The loss the court attributed with respect to the escrow funds, however, had nothing to do with the *establishment* of the escrow or the original purpose for the funds; rather, it had to do with RR One's inability to utilize those funds because they *remained* in the escrow account due to the actions of the defendants and, thus, were unavailable to RR One. There simply is no merit to the defendants' claim.

## IV

The defendants' fourth claim is that the trial court improperly awarded RR One interest on the $5000 that it was forced to hold in escrow as a result of the defendants' actions. In support of this claim, the defendants simply refer back to the arguments advanced in support of its third claim, which we have rejected. Accordingly, this claim fails for the reasons previously stated.

## V

Finally, the defendants claim that the court improperly awarded punitive damages without providing the defendants with adequate notice, citing Practice Book §§ 7-5, 14-7, and 14-20.[8] We are not persuaded.

The following additional facts are relevant to this claim. On March 27, 2018, the plaintiffs filed an affidavit of attorney's fees, a bill of costs, and a motion requesting the court to schedule a hearing in damages to determine the amount of punitive damages awarded. Subsequently, the defendants filed an objection arguing that the court should not conduct a hearing in damages "until the appeal period in this matter has expired . . . ." The defendants filed the present appeal on April 10, 2018. On April 20, 2018, the plaintiffs filed a caseflow

request asking the court to schedule a status conference during the first week of May, 2018, to discuss how the court wanted to proceed with respect to determining the amount of the punitive damages award. When they failed to receive a response from the court, the plaintiffs filed a second caseflow request on July 26, 2018, seeking a status conference on or about August 10, 2018. The court issued notice the next day setting a hearing date of August 6, 2018. The defendants filed a motion for a continuance informing the court that counsel would be unavailable on that date and indicating that the plaintiffs' counsel consented to a continuance provided a hearing was scheduled prior to August 17, 2018. The court issued notice to the parties on August 2, 2018, that the matter would be heard on August 13, 2018. The hearing went forward on that date and was attended by counsel for all the parties. Following the hearing, the court awarded $35,000 in punitive damages.

The defendants claim that the court deprived them "of their due process rights to notice and the opportunity to adequately prepare" for the hearing to determine the amount of punitive damages. The defendants assert that notice of the August 13, 2018 hearing in damages was never properly given by the clerk's office, caseflow, or the court. They also assert that they were not provided with adequate notice of the issues the trial court intended to address. That argument is belied by the trial court record, which contains a proper notice of the hearing date. The notice stated in relevant part that the matter had been "set down for *a hearing* . . . ." (Emphasis added.) Further, the hearing was scheduled in response to the plaintiffs' caseflow request, which specifically had asked for a hearing regarding the punitive damages award. Accordingly, the defendants had notice of the hearing and knew that the purpose of the hearing would be to determine the amount of common-law punitive damages, which in Connecticut is limited to reasonable attorney's fees and nontaxable costs. See *Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 492, 610 A.2d 1212 (1992). The plaintiffs had filed their affidavit of attorney's fees in March, 2018, so any argument by the defendants that they lacked an opportunity to prepare for the hearing is unfounded and that argument properly was rejected by the trial court when it was raised by the defendants' counsel at the hearing in damages. In short, the record demonstrates that the defendants had ample notice of the hearing on punitive damages, attended the hearing, and were afforded a meaningful opportunity to be heard on the merits. The defendants have failed to demonstrate that their due process rights were violated or that the court committed reversible error in calculating the amount of punitive damages.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In addition to Gremp and WCG, Main Street Property Management, LLC

(Main Street), also was named as a defendant in the underlying action. In its memorandum of decision, the trial court expressly stated that it was not awarding damages against Main Street and rendered judgment in its favor on all counts of the complaint. Main Street nevertheless was aggrieved by the court's decision because the court denied counterclaims to which Main Street was a party. Although Main Street is listed as an appellant on the appeal form and is included as a party to the appellants' brief, none of the claims of error raised and briefed on appeal pertains to Main Street or the court's disposition of the counterclaims. We conclude, therefore, that Main Street effectively has abandoned its appeal, and, in our discussion of the claims on appeal, we refer to Gremp and WCG collectively as "the defendants."

[2] The trial court rendered judgment for the defendants on the remaining counts of the complaint alleging vexatious litigation and breach of a fiduciary duty. The court also rendered judgment against the defendants on all counterclaims.

[3] Starboard and its individual members executed a separate, reciprocal general release of any and all claims against Gremp.

[4] Although its meaning is not entirely clear from the record, this language presumably pertains to the unexecuted contingency plan to assign ownership of RR One to Gremp in the event a transfer was needed for Gremp to secure a mortgage, which, as the court found, ultimately proved unnecessary.

[5] On January 31, 2014, Gremp had received a personal loan from Starboard and executed a promissory note in the principal amount of $2819.99 with interest at a rate of 10 percent per year. According to the complaint, Gremp never made any payments on the note, despite demands, and the debt remained due and owing.

[6] A judgment awarding common-law punitive damages is a final appealable judgment even if the amount of punitive damages have not yet been determined. See *Hylton* v. *Gunter*, 313 Conn. 472, 487, 97 A.3d 970 (2014).

[7] To the extent that the defendants' claim is cognizable, it also appears unavailing on its face. The defendants have failed to explain or to analyze how the language in their general release, which begins, "[t]he undersigned agree," could have been legally binding on Starboard, which never signed the general release. The reciprocal release executed by the plaintiffs in favor of Gremp and WCG did not contain the same or similar language.

[8] Practice Book § 7-5 provides in relevant part: "The clerk shall give notice, by mail or by electronic delivery, to the attorneys of record and self-represented parties unless otherwise provided by statute or these rules, of all judgments, nonsuits, defaults, decisions, orders and rulings unless made in their presence. . . ."

Practice Book § 14-17 provides: "The judicial authority may, on its own motion or on the motion of a party and upon a showing of extraordinary circumstances, order a case to be assigned for immediate trial."

Practice Book § 14-20 provides: "Parties and counsel shall be present and ready to proceed to trial on the day and time specified by the judicial authority. The day specified shall be during the week certain selected by counsel."