******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WILLIAM SACKMAN III ET AL. *v.* KELLY A.
QUINLAN, EXECUTRIX (ESTATE OF
NANCY L. SACKMAN), ET AL.
(AC 42748)

DiPentima, C. J., and Alvord and Pellegrino, Js.

*Syllabus*

The plaintiffs sought to recover damages from the defendant children of N
and the defendant spouse of one of the children, claiming, inter alia,
that the defendants were liable for conversion, unjust enrichment and
tortious interference with contractual relations in connection with N's
encumbrance of a condominium that the plaintiffs' deceased father, W,
had quitclaimed to N before his death. W had executed a revised will
that left his interest in the condominium to N, provided that, if she were
to sell the condominium, she was to set aside the proceeds for the
plaintiffs, less any funds that N might need for her comfort and support.
The same day that W executed his revised will, N executed her will,
which provided that, if W predeceased her, her interest in the condomin-
ium would pass to the plaintiffs upon her death. W and N then memorial-
ized their intentions in a separate agreement that referenced the cross
promises in their wills. The agreement provided that, if the property
were sold during N's lifetime and after W's death, N would set aside
the sale proceeds in a special account for the plaintiffs and that, if
the property were not sold, it would be devised to the plaintiffs. The
agreement also stated that it was a third-party beneficiary contract for
the benefit of the plaintiffs and that nothing in the agreement would
limit N's ability to use the funds set aside for her comfort and support,
as provided for in W's revised will. N thereafter used the condominium
as collateral to obtain a $100,000 line of credit and put the proceeds
into an account to which her daughter, the defendant K, had access.
After N died, title to the condominium passed to the plaintiffs. K, who
had been appointed executrix of N's estate, rejected a claim the plaintiffs
filed against the estate in which they sought $76,000 of the line of credit
that they believed N had not used for improvements to the condominium.
In their complaint, the plaintiffs alleged that N had failed to abide by
her promise to W to devise the condominium or the proceeds of its sale
to the plaintiffs and sought to recover the outstanding balance of the
line of credit. While the action was pending, the defendants' counsel,
who had undergone surgery for brain cancer, filed an affidavit with the
court and was permitted to withdraw from representation. When the
defendants' new counsel thereafter filed a motion for summary judg-
ment, the plaintiffs objected to the timing of the motion and to the
contention that the defendants' original counsel was incapacitated, and
the trial court ordered the defendants to file a motion for permission
to file a motion for summary judgment. The court granted the motion for
permission and thereafter granted the defendants' motion for summary
judgment and rendered judgment for the defendants. The court deter-
mined that the written agreement between W and N was void for lack
of consideration and that there was no genuine issue of material fact
that N had complied with the provisions of the agreement. *Held*:

1. The trial court did not abuse its discretion when it granted the defendants'
   motion for permission to file a motion for summary judgment: the plain-
   tiffs failed to present any persuasive arguments that the court abused
   its discretion, including their claim that the court failed to analyze the
   incompetency of the defendants' original counsel pursuant to statute
   (§ 45a-650), § 45a-650 having been inapplicable, as it provides analysis
   for the appointment of a conservator; moreover, the defendants repre-
   sented to the court that their original counsel had demonstrated clear
   deficiencies in his representation, the defendants submitted to the court
   counsel's affidavit, which explained that he was impaired during the
   pendency of the case, as well as counsel's medical records and a chart
   of his treatment dates and corresponding trial court dates, and no trial
   date had been scheduled at the time the defendants filed their motion
   for permission to file a motion for summary judgment.

2. The trial court properly rendered summary judgment for the defendants, there having been no genuine issue of material fact as to the plaintiffs' claims of conversion, unjust enrichment and intentional interference with contractual relations: because N owned the condominium after it was quitclaimed to her, she had the right to borrow against it and, thus, K could not have converted funds that the plaintiffs did not own and could not have been unjustly enriched when N placed funds from the line of credit into an account that passed to K, and, because there was no merit to the plaintiffs' claim that the trial court improperly determined that the agreement between W and N was invalid, the defendants could not have interfered with the agreement; moreover, even if the agreement had been considered, it added only that N had promised not to change her will, the plaintiffs did not argue that N changed her will, the property thereafter was devised to the plaintiffs in accordance with N's will and the agreement, and, as summary judgment for the defendants was proper, the plaintiffs' claim that the trial court failed to view the evidence in the light most favorable to them was unavailing.

Argued February 11—officially released June 30, 2020

*Procedural History*

Action to recover damages for, inter alia, conversion, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Wilson, J.*, granted the defendants' motion for permission to file a motion for summary judgment; thereafter, the action was withdrawn as against the named defendant; subsequently, the court granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*Ellen C. Sackman*, self-represented, with whom, on the brief, were *William Sackman III*, self-represented, and *Steven Sackman*, self-represented, the appellants (plaintiffs).

*Cristina Salamone*, with whom, on the brief, was *Steven C. Rickman*, for the appellees (defendants).

*Opinion*

PELLEGRINO, J. This appeal arises from a dispute between the self-represented plaintiffs,[1] the biological children of William Sackman, Jr. (William), from his marriage to Elaine Sackman (Elaine), and the defendants,[2] who are the children of William's second wife, Nancy L. Sackman (Nancy), and one of the children's spouse. The plaintiffs appeal from the judgment of the trial court, rendered in favor of the defendants on a motion for summary judgment. On appeal, the plaintiffs claim that the trial court improperly (1) allowed the defendants to file a motion for summary judgment, (2) granted the defendants' motion for summary judgment, and (3) failed to view the evidence in the light most favorable to the nonmoving party. We disagree and, therefore, affirm the judgment of the trial court.

The following undisputed facts are relevant to the resolution of this appeal. William and Elaine had three children issue of their marriage, the plaintiffs: William Sackman lll, Steven Sackman, and Ellen Sackman. After Elaine died in 1991, William married Nancy. Nancy had two children issue of a previous marriage, the defendants: Kelly A. Quinlan (Kelly) and Christopher M. Sattler. Kelly is married to Peter J. Quinlan, who is also a named defendant. William owned a home that he had acquired during his marriage to Elaine that was unencumbered when he sold it in 1999. With the proceeds from that sale, he purchased a condominium (condo) in Cheshire that is at the heart of this appeal.

William executed a will that provided that, if he were to predecease Nancy, she would have a life use of the condo, and the plaintiffs would have a remainder interest. In July, 2007, William executed a new will that provided that, in the event that he predeceased Nancy, his interest in the condo would pass to Nancy outright, provided that, if she sold the condo, she had to set aside the proceeds for the plaintiffs, less any funds that she may need for her comfort and support.[3] That same day, Nancy executed a will providing that, if William predeceased her, her interest in the condo would pass to the plaintiffs upon her death.[4]

In a document dated August 13, 2007 (agreement), William and Nancy memorialized their intentions. The agreement referenced the cross promises contained in William's and Nancy's wills and explained that William had originally left the condo to Nancy "for the term of her natural life" but that, in agreement with Nancy, he was revising his will to leave the property to her outright, "primarily to provide her with a means to increase her income should it be necessary by means of a reverse mortgage." The agreement stated that William was willing to execute his will "provided that in the event such property is sold during the lifetime of Nancy and after the death of William, that she will set aside the net

proceeds from the sale of such real property into a special account earmarked for distribution to [the plaintiffs] . . . . Further, in the event such property is not sold, it will be devised to [the plaintiffs]. . . ." The agreement added that Nancy agreed not to change her will "without the written consent of William while he is alive and in the event of his death without the written consent of [the plaintiffs] . . . ." Further, "the parties specifically agree that this [a]greement is a [third-party] beneficiary contract for the benefit of [the plaintiffs]" and that "[n]othing herein shall be construed to limit the ability of Nancy to utilize the funds so set aside for her comfort and support" in article fourth of William's will. On June 5, 2012, after William had become ill, Ellen Sackman, as attorney in fact for her father, quitclaimed William's interest in the condo to Nancy. Ellen claimed, in an affidavit to the trial court, that she had known that she "would have to open a formal estate for no other reason but to transfer the [condo] to Nancy. [She], therefore, made the decision to avoid probate by using the general [p]ower of [a]ttorney from [her] father to transfer the condominium to Nancy." William subsequently died on June 13, 2012.

Thereafter, Nancy obtained a $100,000 line of credit, using the condo as collateral, and put the proceeds into an account, to which Kelly had access. Prior to her death in March, 2016, Nancy withdrew money from the account to, among other things, make improvements to the condo and to purchase an automobile. After Nancy died, Kelly was appointed executrix of her estate by the Probate Court in Cheshire. The plaintiffs subsequently filed an application for an order regarding a certificate of devise of the condo, dated June 3, 2016. In their application for the order, the plaintiffs alleged that the condo was encumbered by the line of credit and, accordingly, sought a court order to sell the condo and pay off the line of credit. On that same day, the plaintiffs filed a claim against Nancy's estate seeking $76,000 of the line of credit that the plaintiffs believed Nancy had not used for improvements to the condo. Kelly, as executrix, rejected the claim. In accordance with Nancy's will, title to the condo passed to the plaintiffs, who sold it. The net proceeds from the sale of the condo were placed in a restricted account, and a portion of those proceeds eventually were distributed to the plaintiffs.[5]

The plaintiffs commenced the present action on September 30, 2016, claiming that Nancy had failed to abide by her promise to William that she would devise the condo, or the proceeds from its sale, to the plaintiffs. The plaintiffs, thus, sought to recover the outstanding balance of the line of credit held in Nancy's account. The complaint contained six counts. Three counts were alleged against Kelly in her capacity as executrix of the estate: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) breach of fiduciary duty. The remaining counts were alleged

against the defendants in their individual capacities: (1) conversion against Kelly; (2) unjust enrichment against Kelly; and (3) tortious interference with a contract against Christopher, Kelly, and Peter.

The parties filed a joint scheduling order on April 11, 2017, which provided that any dispositive motions were to be filed by May 8, 2017. Trial was scheduled for January 29, 2018. While the case was pending, the defendants' original counsel was diagnosed with, and underwent surgery for, terminal brain cancer. On December 29, 2017, original counsel filed a motion for a continuance, requesting that the case be continued to March 2, 2018, which the court granted on January 2, 2018, and marked off the trial date, which was to be set later by the court. Original counsel subsequently withdrew his appearance on January 3, 2018. The defendants then filed a motion for a continuance, dated February 28, 2018, to which the plaintiffs filed an objection on March 2, 2018. The plaintiffs also filed a new trial management report on March 1, 2018. New counsel filed an appearance on behalf of the defendants on March 8, 2018, and filed a motion for summary judgment on March 29, 2018. The plaintiffs objected to the timing of the motion for summary judgment and to the defendants' contention that the defendants' original counsel was incapacitated. Although at the time the motion for summary judgment was filed no trial date was set, a trial management order was in place. Accordingly, the court ordered the defendants to file a motion for permission to file a motion for summary judgment so that it could be apprised of all relevant information before deciding whether to exercise its discretion pursuant to Practice Book § 17-44 to grant the motion to file a motion for summary judgment.

In support of their motion for permission to file a motion for summary judgment, the defendants submitted, inter alia, an affidavit from their original counsel and his medical records detailing his condition and treatment to explain the reason why their motion for summary judgment had not been filed earlier. The trial court held a hearing on the motion for permission to file a late motion for summary judgment on June 4, 2018, and, after considering the arguments and affidavits filed by both parties, granted the defendants' motion for permission to file the motion for summary judgment. The trial court subsequently held a hearing on the motion for summary judgment on November 13, 2018. On March 1, 2019, the plaintiffs withdrew the counts of the complaint alleged against Kelly in her capacity as executrix.

In its March 13, 2019 memorandum of decision on the defendants' motion for summary judgment, the trial court found, as a matter of law, that William and Nancy's August 13, 2007 written agreement was void for lack of consideration. The court also concluded that there was no genuine issue of material fact that Nancy had

complied with the provisions of her agreement with William in that, if she sold the condo, the net proceeds of the sale would go to the plaintiffs and that, if she did not sell the condo, her interest in the property would pass to the plaintiffs. Accordingly, the court rendered judgment in favor of the defendants. This appeal followed.

I

On appeal, the plaintiffs first claim that the trial court abused its discretion by granting the defendants permission to file a motion for summary judgment in that the court (1) failed to "follow accepted guidelines for determining incompetency of prior counsel," (2) improperly considered original counsel's affidavit, and (3) "improperly relieved [the] defendants of [their] responsibility" to demonstrate original counsel's incapacity.

Practice Book § 17-44 provides in relevant part: "In any action . . . any party may move for a summary judgment . . . at any time if no scheduling order exists and the case has not been assigned for trial. If a scheduling order has been entered by the court, either party may move for summary judgment as to any claim or defense as a matter of right by the time specified in the scheduling order. If no scheduling order exists but the case has been assigned for trial, a party must move for permission of the judicial authority to file a motion for summary judgment. . . . The pendency of a motion for summary judgment shall delay trial only at the discretion of the trial judge." Accordingly, we review the trial court's decision for an abuse of discretion. See *Chadha* v. *Charlotte Hungerford Hospital*, 97 Conn. App. 527, 533, 906 A.2d 14 (2006). "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citation omitted; internal quotation marks omitted.) *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 328–29, 838 A.2d 135 (2004).

The plaintiffs claim that the trial court failed to analyze the "incompetency" of the defendants' original counsel under General Statutes § 45a-650 (c) (1)[6] and therefore improperly granted the defendants' motion for summary judgment. This claim is meritless because § 45a-650 is not applicable. Instead, § 45a-650 provides the analysis for the appointment of a conservator. The plaintiffs also claim that the trial court improperly considered original counsel's affidavit. The plaintiffs, however, provide no basis for their argument.[7] Finally, the plaintiffs argue that the trial court improperly relieved the defendants of their responsibility to "keep apprised of their case" and that the trial court "erred in allowing

[the] defendants to retroactively assert that their counsel was incapable simply because they believe their counsel may have made a mistake." The plaintiffs, however, do not explain how the trial court acted improperly in utilizing its discretion to allow the defendants to file a motion for permission to file a motion for summary judgment. As such, the plaintiffs have not presented any persuasive arguments that would lead us to determine that the trial court abused its discretion in granting the defendants permission to file a motion for summary judgment.

In considering whether to allow the defendants to file their motion for summary judgment, the trial court heard representations from the defendants that original counsel did demonstrate some clear deficiencies in his representation, including that "he filed an answer in draft (red lined) format, conducted no discovery, and was subjected to numerous motions for default and judgment." The trial court was presented with evidence that the defendants' original counsel was diagnosed with terminal brain cancer and was undergoing treatment while the case was pending. The defendants submitted original counsel's medical records, a chart of his treatment dates and corresponding trial court dates, and an affidavit from original counsel explaining his condition. Original counsel's affidavit explained that he was impaired during the pendency of this case. He died within three months of submitting the affidavit. Further, no trial date was scheduled at the time the defendants filed their motion for permission to file a motion for summary judgment. On the basis of the record before us, we conclude that the court did not abuse its discretion by granting the defendants' motion for permission to file a motion for summary judgment.[8]

## II

The plaintiffs also claim that the trial court improperly granted the defendants' motion for summary judgment because the defendants were not entitled to judgment. Specifically, the plaintiffs claim that the trial court (1) failed to consider "the limitation of 'for her comfort and support,' " (2) failed to consider "the legal definition of a sale and of the term 'proceeds,' "[9] and (3) improperly determined that the agreement was invalid. Further, the plaintiffs claim that the court failed to view the evidence in the light most favorable to themselves as the nonmoving parties. We disagree.

"The standard of review of a trial court's decision to grant summary judgment is well established. [W]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict

on the same facts. . . . This court's review of the trial court's decision to grant summary judgment . . . is plenary." (Internal quotation marks omitted.) *TD Bank, N.A.* v. *Salce*, 175 Conn. App. 757, 765–66, 169 A.3d 317 (2017).

After the plaintiffs withdrew the three counts against Kelly in her capacity as executrix, the only counts remaining were conversion, unjust enrichment, and tortious interference with a contract as to all defendants.

The plaintiffs alleged that the funds from the line of credit belonged to them and that Kelly converted those funds by retaining ownership over them. "The tort of [c]onversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 770, 905 A.2d 623 (2006). "To establish a prima facie case of conversion, the plaintiff must demonstrate that (1) the material at issue belonged to the plaintiff, (2) that the defendants deprived the plaintiff of that material for an indefinite period of time, (3) that the defendants' conduct was unauthorized and (4) that the defendants' conduct harmed the plaintiff." *Stewart* v. *King*, 121 Conn. App. 64, 74 n.4, 994 A.2d 308 (2010). The trial court found that there was no genuine issue of material fact that Nancy owned the condo after Ellen quitclaimed it to her prior to William's death. As the owner of the condo, Nancy had the right to borrow against it as she wished. Kelly, therefore, could not have converted funds that the plaintiffs did not own.

The plaintiffs also alleged that Kelly was unjustly enriched. The plaintiffs argued that Nancy did not have the right to take the funds from the line of credit and retain them in an account that passed to Kelly.

"Unjust enrichment is a doctrine allowing damages for restitution, that is, the restoration to a party of money, services or goods of which he or she was deprived that benefited another." (Internal quotation marks omitted.) *Piccolo* v. *American Auto Sales, LLC*, 195 Conn. App. 486, 494, 225 A.3d 961 (2020). "[U]njust enrichment relates to a benefit of money or property . . . and applies when no remedy is available based on the contract. . . . The lack of a remedy under a contract is a precondition to recovery based on unjust enrichment . . . . It would be contrary to equity and fairness to allow a defendant to retain a benefit at the expense of the plaintiff." (Internal quotation marks omitted.) Id., 499.

The trial court determined that there was no genuine issue of material fact that, at the time Nancy borrowed money against the condo, she was the sole owner of the condo pursuant to the quitclaim deed Ellen signed as attorney in fact for William. The funds Nancy bor-

rowed on the condo were hers to do with as she wished, and she could permit whomever she wished to have access to the funds. The funds from the home equity line of credit were never the plaintiffs'. The trial court accordingly rendered judgment on behalf of the defendants on this claim.

The plaintiffs alleged intentional interference with contractual relations against the defendants, specifically, that Nancy violated the terms of the agreement by siphoning equity from the condo and passing it to Kelly. The plaintiffs alleged that the funds were in Nancy's account, to which Kelly had access at Nancy's death, and, as a result, the defendants retained the funds from the line of credit in violation of the agreement.

"A claim for intentional interference with contractual relations requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) [that there was] a loss suffered by the plaintiff that was caused by the defendant's tortious conduct." (Internal quotation marks omitted.) *Starboard Fairfield Development, LLC* v. *Gremp*, 195 Conn. App. 21, 32, 223 A.3d 75 (2019).

The plaintiffs alleged that they were remainder beneficiaries of the agreement between Nancy and William. The plaintiffs further argued that Nancy's actions violated the agreement and that the proceeds of the line of credit were transferred improperly to Kelly upon Nancy's death. The trial court determined, as a matter of law, that the agreement between William and Nancy, in which Nancy promised not to alter her will without permission from William or the plaintiffs, was void and therefore unenforceable. Because there was no valid agreement between William and Nancy, the defendants could not have interfered with it. Prior to her death, Nancy owned the condo pursuant to the quitclaim deed and had the right to borrow against her interest in it. Despite the fact that the agreement was unenforceable, Nancy abided by her promise to William and, pursuant to her will, devised her interest in the condo to the plaintiffs at her death.

After thoroughly reviewing the record, including the pleadings and affidavits submitted in support of the defendants' motion for summary judgment, we are persuaded that the trial court properly rendered summary judgment in favor of the defendants. The parties agree that there are no genuine issues of material fact. On appeal, the plaintiffs argue that Nancy's ability to borrow against the condo was restricted by the terms of the will limiting her access to funds "for her comfort and support." The trial court did not reach that conclusion when presented with the record. At the time of Nancy's death, she was the owner of the condo, which had been quitclaimed to her before William's death. Under the

terms of her will, there was no prohibition against taking out a line of credit; she agreed only to devise the property to the plaintiffs, which she did. The plaintiffs, therefore, had no basis for their claim to the proceeds of the line of credit.

We see no merit to the plaintiffs' claim that the trial court improperly determined that the agreement was invalid. The trial court explained that, even if the agreement was considered, the agreement added only that Nancy promised not to change her will, and the plaintiffs do not argue that Nancy changed her will. In accordance with her will and the agreement, if considered, the property was devised to the plaintiffs. Further, because we agree with the trial court's determination that summary judgment in favor of the defendants was appropriate in this case, we reject the plaintiffs' claim that the trial court failed to view the evidence in the light most favorable to the plaintiffs. On the basis of the foregoing, we conclude that the trial court properly rendered summary judgment in favor of the defendants and, therefore, affirm the judgment of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiffs are William Sackman III, Steven Sackman, and Ellen Sackman.

[2] The defendants are Kelly A. Quinlan (Kelly), Christopher M. Sattler, and Peter J. Quinlan (Peter). Kelly and Sattler are the biological children of Nancy Sackman; Peter is married to Kelly. Kelly was sued in her individual capacity and in her capacity as the executrix of Nancy Sackman's estate.

[3] Article fourth of William's will states: "I give and devise to my wife, NANCY L. SACKMAN, if she survives me, all of my interest in and to the real property known as [the condo]. . . . I further request that my wife shall devise the same at her death to [the plaintiffs] and the then living issue of any deceased child of mine. In the event she shall sell such real property, I request that she set aside the net proceeds thereof in a separate account earmarked for eventual distribution to [the plaintiffs] pursuant to a last will and testament to be executed by her. . . . I further request that my wife, in the event that she shall sell such real property, shall set aside the net proceeds thereof in a separate account earmarked for eventual distribution to [the plaintiffs] pursuant to a Last Will and Testament to be executed by her. By such direction I do not mean that my wife should not be entitled to utilize such funds during her lifetime for her comfort and support, but rather that any proceeds remaining at her death should pass to [the plaintiffs] or if any be deceased, to their issue."

[4] Article fourth of Nancy's will provides: "If at the time of my death I have an interest in real property known as [the condo] . . . and be using as my residence, I give and devise the same to [the plaintiffs] . . . . I further direct that in the event that I have sold [the condo] . . . or such other residential property that I may own, and have not acquired another residence, then the net proceeds remaining from the sale of such real property that I have set aside in a special account earmarked for distribution to [the plaintiffs] be distributed to them . . . ."

[5] The property was sold on September 9, 2016, for $197,000. Subsequently, $101,229.88 of those sale proceeds were used to pay off the home equity line of credit. After the home equity line of credit was paid off, the Probate Court ordered the remaining funds, $81,799, put into a restricted account. The Probate Court approved the distribution of $8827.42 to Steven Sackman as reimbursement for work done on the condo and ordered $10,000 to be distributed to each of the plaintiffs. A total of $43,000 of the net proceeds of the sale remained in the restricted account to ensure that there were assets available to pay the expenses of Nancy's estate.

[6] General Statutes § 45a-650 provides in relevant part: "(a) At any hearing on a petition for involuntary representation, before the court receives any

evidence regarding the condition of the respondent or of the respondent's affairs, the court shall require clear and convincing evidence that the court has jurisdiction, that the respondent has been given notice as required in section 45a-649, and that the respondent has been advised of the right to retain an attorney pursuant to section 45a-649a and is either represented by an attorney or has waived the right to be represented by an attorney. The respondent shall have the right to attend any hearing held under this section. . . .

"(c) (1) After making the findings required under subsection (a) of this section, the court shall receive evidence regarding the respondent's condition, the capacity of the respondent to care for himself or herself or to manage his or her affairs, and the ability of the respondent to meet his or her needs without the appointment of a conservator. Unless waived by the court pursuant to subdivision (2) of this subsection, medical evidence shall be introduced from one or more physicians licensed to practice medicine in this state who have examined the respondent not more than forty-five days prior to the hearing, except that for a person with intellectual disability, as defined in section 1-1g, psychological evidence may be introduced in lieu of such medical evidence from a psychologist licensed pursuant to chapter 383 who has examined the respondent not more than forty-five days prior to the hearing. The evidence shall contain specific information regarding the respondent's condition and the effect of the respondent's condition on the respondent's ability to care for himself or herself or to manage his or her affairs. The court may also consider such other evidence as may be available and relevant, including, but not limited to, a summary of the physical and social functioning level or ability of the respondent, and the availability of support services from the family, neighbors, community or any other appropriate source. Such evidence may include, if available, reports from the social work service of a general hospital, municipal social worker, director of social service, public health nurse, public health agency, psychologist, coordinating assessment and monitoring agencies, or such other persons as the court considers qualified to provide such evidence."

[7] The plaintiffs argue in their principal brief to this court: "The fact that [original counsel] was ill is not in dispute, but if he at any time during his approximately thirteen month representation of the defendants believed his illness was interfering with his ability to represent them, he had the responsibility to withdraw as counsel. Instead he participated in the pretrial process and only retroactively swore in an affidavit that he had been impaired when he was requested to by the defendants' new counsel and the defendant Peter Quinlan, who was [original counsel's] longtime personal friend. By accepting and relying on [prior counsel's] affidavit in which he stated that he had been impaired, the court unfairly permitted the defendants to restart the case."

The plaintiffs provide no basis for their claims of impropriety on behalf of original counsel. Further, the plaintiffs do not explain why it was inappropriate for the court to have considered original counsel's affidavit. In addition to filing original counsel's affidavit, the defendants filed original counsel's medical records with the court, as well as an e-mail from original counsel explaining his treatment.

[8] The trial court did not file a memorandum of decision regarding its decision to allow the defendants to file their motion for summary judgment.

[9] The plaintiffs' claim on appeal that the trial court failed to consider whether Nancy, by taking out a line of credit on the condo, actually sold the property and that the funds from the loan were therefore proceeds of the sale. The trial court refused to consider this claim because the plaintiffs did not raise this argument until the hearing on the summary judgment motion. The plaintiffs did not raise this claim in their complaint or in their objection to the motion for summary judgment. Because this claim was not properly raised before and decided by the trial court, we do not consider it here. See *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 629–32, 99 A.3d 1079 (2014).