******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

GLEN A. CANNER, EXECUTOR (ESTATE OF
CHARLES A. CANNER) *v.* GOVERNOR'S
RIDGE ASSOCIATION, INC., ET AL.
(AC 42981)
LOUIS D. PUTERI *v.* GOVERNOR'S RIDGE
ASSOCIATION, INC., ET AL.
(AC 42982)

Prescott, Suarez and DiPentima, Js.

*Syllabus*

In two separate actions, each plaintiff appealed from the decision of the trial
court concluding that all of his claims, including, inter alia, negligence,
against the defendants, including G Co., were time barred by the applica-
ble statute of limitations. Each plaintiff was the owner of a condominium
unit in G Co.'s common interest community, and each plaintiff alleged
various claims against the defendants, seeking damages and an order
directing the defendants to repair the foundation of the condominium
unit and any damage to that unit resulting from certain problems with
the foundation and settling after construction. Following a hearing, the
court rendered judgment in favor of the defendants in each case, and
each plaintiff filed a separate appeal to this court. *Held*:

1. The trial court properly concluded that the plaintiff C's claims against G Co.
brought pursuant to the applicable provision (§ 47-278) of the Common
Interest Ownership Act (CIOA) (§ 47-200 et seq.) were barred by the
three year tort statute of limitations codified in statute (§ 52-577).

a. The trial court correctly determined that C's claims seeking to enforce
a right granted or obligation imposed by the CIOA, or by the declaration
or the bylaws of the common interest community did not sound in
contract and that § 52-577 was the appropriate statute of limitations:
C's claims sounded in tort, as the CIOA creates a statutory duty on a
condominium association to maintain, repair, and replace the common
elements, and C alleged that G Co. failed, neglected, and refused to
maintain its common elements, failed to promptly repair its common
elements, and failed to promptly take responsibility for and deal with
problems related to common elements in violation of the CIOA; more-
over, the claims did not sound in breach of contract because the provi-
sions of G Co.'s governing documents relied on by C did not create a
contractual obligation on the part of G Co. to maintain, repair, and/or
replace the foundation for the unit but, rather, they made clear that the
contractual obligation for G Co. to repair and replace the common
elements was contingent on areas of the common interest community
for which insurance was required, and it was clear that foundations
were excluded areas for purposes of insurance.

b. The trial court's factual findings and legal conclusions were sufficiently
supported by the record and were not clearly erroneous: because § 52-
577 is a statute of repose, and not a true statute of limitations, the time
period within which a plaintiff must commence an action begins to run
at the moment the act or omission complained of occurs, and C explicitly
described the original wrong as G Co.'s allowing the units to be built
on soft ground, such that the closing date, which was the day on which
C came into possession of the unit with an allegedly defective foundation,
was the date on which the statute of repose period began to run, and
C commenced his action beyond the period of time in § 52-577; moreover,
the court properly concluded that the doctrine of equitable estoppel did
not preclude G Co. from asserting its statute of limitations defense, as,
although C asserted that he relied on G Co.'s alleged representations
that it would repair the foundation, reliance alone was insufficient to
sustain the burden of proof for the imposition of equitable estoppel,
and the court explicitly found that the evidence established that C did
not exercise due diligence that would have uncovered the alleged initial
conduct and that there was simply no evidence that, during the applica-
ble limitation period, G Co., by its conduct or otherwise, did anything
to induce C to refrain from filing suit.

c. This court declined to review C's claim that the trial court improperly concluded that his nuisance claims were barred by the statute of limitations: C's claim that the trial court erred in ruling that the nuisance alleged was permanent as opposed to temporary without having the benefit of expert testimony was inadequately briefed; moreover, C's claim that the court erred in ruling that the nuisance alleged was permanent as opposed to temporary without affording C an opportunity to present expert testimony was not properly preserved for appellate review, as a review of the record revealed that C did not seek to introduce expert testimony at any time before or during the limited evidentiary hearing and did not raise any issue about expert witness testimony in his motion to reargue and/or to correct the judgment.

2. For the same legal reasons that C's claims failed, the plaintiff P's claims failed as well, and, even though the underlying facts differed slightly between the appeals, P's briefing on appeal was almost identical to that of C.

Argued March 11, 2021—officially released February 15, 2022

*Procedural History*

Action, in each case, for, inter alia, negligence, and for other relief, brought to the Superior Court in the judicial district of Fairfield, and transferred to the judicial district of Waterbury, Complex Litigation Docket, where the cases were tried to the court, *Lager, J.*; judgment in each case for the defendants, from which the plaintiff in each case filed an appeal to this court. *Affirmed.*

*Glen A. Canner*, for the appellant in Docket Nos. AC 42981 and AC 42982 (plaintiff in each case).

*Timothy M. Gondek*, for the appellee in Docket Nos. AC 42981 and AC 42982 (named defendant).

*Deborah Etlinger*, with whom, on the brief, was *Erin Canalia*, for the appellees in Docket Nos. AC 42981 and AC 42982 (defendants South Meadow Development, LLC, Glenn Tatangelo, and Anthony O. Lucera).

*Adam J. DiFulvio*, with whom, on the brief, was *Thomas R. Gerarde*, for the appellees in Docket Nos. AC 42981 and AC 42982 (defendants Town of Trumbull and Donald G. Murray).

*Donald W. Doeg*, with whom, on the brief, was *Matthew K. Stiles*, for the appellees in Docket Nos. AC 42981 and AC 42982 (defendants Adeeb Consulting, LLC, and Kareem Adeeb).

*Opinion*

SUAREZ, J. These appeals arise from a dispute concerning the foundations of two condominium units located in the Governor's Ridge common interest community in Trumbull.[1] In Docket No. AC 42981 (first appeal), the plaintiff, Glen A. Canner (Canner), in his capacity as executor of the estate of Charles A. Canner,[2] appeals from the judgment of the trial court in favor of the defendants, Governor's Ridge Association, Inc. (Governor's Ridge); South Meadow Development, LLC (South Meadow), Glenn Tatangelo, and Anthony O. Lucera (South Meadow defendants); the town of Trumbull and Donald G. Murray (town defendants); and Adeeb Consulting, LLC (Adeeb Consulting) and Kareem Adeeb (Adeeb defendants),[3] after the court concluded that each count alleged against the defendants was time barred by the applicable statute of limitations. On appeal, Canner claims that the court improperly concluded that (1) his claim against Governor's Ridge brought pursuant to General Statutes § 47-278 is time barred by the statute of limitations period set forth in General Statutes § 52-577, and (2) his nuisance claims are time barred by the statute of limitations codified in either § 52-577 or General Statutes § 52-584.

In Docket No. AC 42982 (second appeal), the plaintiff, Louis D. Puteri, similarly appeals from the judgment of the trial court in favor of the defendants after the court concluded that each count alleged against the defendants was time barred by the applicable statute of limitations. On appeal, Puteri claims that the court erred for the same reasons Canner asserts in his appeal. We disagree with the plaintiffs and, accordingly, affirm the judgments of the court.

## I

### AC 42981

The first appeal involves property located at 220 Fitch's Pass, a condominium unit located in the Governor's Ridge common interest community in Trumbull (220 Unit). We begin by setting forth the procedural history of this case as well as the relevant facts that were found by the trial court or are otherwise undisputed.

In 2000, Governor's Ridge applied to the Trumbull Planning and Zoning Commission (planning and zoning commission) to construct thirty-six detached units constituting phase II of the Governor's Ridge common interest community. The 220 Unit was a part of this phase. A hearing was held on the application on November 27, 2000, and, on January 10, 2001, the planning and zoning commission issued a special permit to Governor's Ridge to construct the units. The permit stated: "A report shall be submitted to the Building Official which specifies the depth of the peat, where it begins and stops, the proposed method of remediation, the proposed depth of the fill, and the proposed depth of

the pilings for each individual unit; the report shall be permanently retained at the Trumbull Town Hall." Although the planning and zoning commission's special permit contained provisions related to foundation construction in light of certain soil conditions, the Trumbull Building Department (building department) ultimately retained jurisdiction over how the foundations were constructed and whether to issue a certificate of occupancy for the particular units.

On June 27, 2001, Governor's Ridge sold the phase II development rights to South Meadow, which had been formed by Tatangelo and Lucera. According to Tatangelo, South Meadow was aware at the time that the soil conditions at the phase II location presented certain challenges. As a result, South Meadow hired Adeeb Consulting on June 13, 2001, for limited engineering services concerning the design of the foundations. Kareem Adeeb, a geotechnical and structural engineer, concluded that a piling system for phase II foundations would not be viable. Accordingly, Adeeb designed a foundation system using geo-fabric, footings, and grade beams to "tie all foundation elements together and increase the rigidity of the foundation system" in order "to decrease, if not eliminate, the chance that differential settlement will take place."[4] Because the soil conditions were different for each unit's location, Adeeb addressed each unit separately by making borings, designing a foundation for each condominium unit, and performing site visits. The building department ultimately approved Adeeb's design and inspected each foundation to determine, inter alia, whether the geo-fabric was properly installed and the footings were properly designed.

On July 27, 2001, South Meadow issued a public offering statement for phase II. The statement included, among other things, architectural drawings for the various phase II unit models. The drawings showed that the foundations would be built with concrete walls and footings, not with piles. On December 28, 2001, Canner, on behalf of his parents, Charles A. Canner (Charles) and Doris L. Canner (Doris), sent South Meadow's attorney a signed contract with a purchaser's rider and a deposit check for the purchase of the 220 Unit. On January 16, 2002, after making borings at the site, Adeeb Consulting issued a report concerning the construction of the unit's foundation. That same day, a building department official issued a building permit that did not require that the foundation for the unit be built on piles.

While construction was in progress, Donald G. Murray, a building department official, issued a certificate of occupancy for the 220 Unit—the final act of the building department's involvement with the 220 Unit. As of the date the certificate was issued, construction was substantially complete. On April 30, 2002, Charles

and Doris closed on the purchase of the 220 Unit.

Although not within his jurisdiction, Paul Kallmeyer, the Trumbull Director of Public Works and Town Engineer, decided to monitor certain phase II units for settlement.[5] There was no directive from the town to do so. Between November 26, 2003, and September 30, 2008, the Trumbull engineering department went to the 220 Unit to take certain measurements, which Charles later received. Although the town maintained extensive documentation about phase II, Canner was not aware if his father had made any effort to obtain town records between 2003 and 2008.

In 2011, pursuant to a power of attorney, Canner took steps to put the unit on the market, including preparing a residential property condition form, which identified "[m]inor settling problem several years ago" with respect to the foundations and basement but indicated the settling had been repaired and there had been no problems since that time. The 220 Unit was put on the market on March 27, 2011, but it did not sell. On May 10, 2011, the real estate agent marketing the 220 Unit sent Canner an e-mail discussing a prospective buyer's concern "about the very dramatic slope in the floors—from the basement up to the second floor." Canner testified that he did not notice any settlement during the period of time when the unit was on the market, but he also testified that by May 10, 2011, he was aware of a slope in the unit's floors and that by March 27, 2011, Charles had given him the chart containing the 2003 to 2008 engineering measurements.

In June, 2012, Governor's Ridge hired Fuller Engineering & Land Surveying, LLC, to monitor settling at the 220 Unit, in addition to several other units. On February 15, 2013, Canner hired Peter Seirup, a professional engineer, of Home Directions, Inc., to inspect the unit. Seirup's home inspection report took into account, in part, "a table of settlement data taken from 2003 to 2008 . . . ." This presumably was the engineering assessment data that Charles possessed. The report stated that "building settlement occurs most dramatically in the beginning, then trails off." On or around April 26, 2013, Canner sent this report to the property manager for Governor's Ridge and also went to Trumbull Town Hall to talk to town officials. Between that date and January 10, 2016, Canner continued to communicate with Governor's Ridge and the property manager to try to address the unit's settlement. During the same time period, and particularly from 2013 through 2015, minutes of Governor's Ridge board meetings reflect ongoing discussions and actions related to settlement at the 220 Unit.

Doris died on December 11, 2012, and Charles on December 12, 2015. Canner, as the executor of Charles' estate, commenced this action against all the defendants on February 11, 2016, seeking damages and an

order directing the defendants to repair the foundation and any damages to the unit resulting from the condition of the foundation. The sixth amended complaint, which is the operative complaint, contains, inter alia, counts against the defendants alleging negligence, nuisance, fraud, fraudulent misrepresentation, breach of contract, and violations of the Common Interest Ownership Act (CIOA), General Statutes § 47-200 et seq.

The defendants raised numerous special defenses in their respective answers to the operative complaint. The court ordered, with the consent of all parties, an evidentiary hearing limited to the statute of limitations defenses and the matters raised in avoidance of the statutes of limitations.[6] On November 8 and 9, 2018, the court held an evidentiary hearing to determine which statute of limitations applied to each count, and whether those statutes time barred the plaintiff's claims against the defendants. Posthearing briefing was completed by February 28, 2019.

On May 7, 2019, the court issued a memorandum of decision in which it concluded that each count against the defendants was time barred by the applicable statute of limitations and, thus, rendered judgment in favor of the defendants. On May 24, 2019, Canner, pursuant to "Practice Book § 11-11 and/or § 11-12," filed a "motion to reargue and/or correct judgment."[7] On the same date, Canner appealed to this court.

### A

Canner's principal argument on appeal is that the court improperly concluded that his claim against Governor's Ridge that he brought pursuant to § 47-278, count one of the operative complaint, was barred by the three year tort statute of limitations codified in § 52-577. In his view, his claim is contractual in nature because the legal duties alleged to have been breached stemmed from Governor's Ridge's governing documents (common interest declaration, bylaws, and handbook)[8] and, accordingly, the six year statute of limitations set forth in General Statutes § 52-576[9] is the appropriate limitation period.[10] We disagree.

"The determination of which statute of limitations applies to a given action is a question of law over which our review is plenary." *Vaccaro* v. *Shell Beach Condominium, Inc.*, 169 Conn. App. 21, 29, 148 A.3d 1123 (2016), cert. denied, 324 Conn. 917, 154 A.3d 1008 (2017). Furthermore, to the extent that we must interpret the parties' pleadings, our review also is plenary. See *Byrne* v. *Avery Center for Obstetrics & Gynecology, P.C.*, 314 Conn. 433, 462, 102 A.3d 32 (2014).

Because § 47-278, which authorizes a cause of action "to enforce a right granted or obligation imposed by [the CIOA], the declaration or the bylaws"; General Statutes § 47-278 (a); does not include an express statute of limitations period, we must decide which statute

of limitations period is applicable to the present claim. "Public policy generally supports the limitation of a cause of action in order to grant some degree of certainty to litigants. . . . The purpose of [a] statute of limitation[s] . . . is . . . to (1) prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise. . . . Therefore, when a statute includes no express statute of limitations, we should not simply assume that there is no limitation period. Instead, we borrow the most suitable statute of limitations on the basis of the nature of the cause of action or of the right sued upon." (Emphasis omitted; internal quotation marks omitted.) *Bouchard* v. *State Employees Retirement Commission*, 328 Conn. 345, 359–60, 178 A.3d 1023 (2018), quoting *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 199, 931 A.2d 916 (2007).

Generally, "[w]hether [a] plaintiff's cause of action is one for [tort or contract] depends upon the definition of [those terms] and the allegations of the complaint." (Internal quotation marks omitted.) *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291, 87 A.3d 534 (2014). "[T]he fundamental difference between tort and contract lies in the nature of the interests protected. . . . The duties of conduct which give rise to [a tort action] are imposed by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties. . . . [W]hen a plaintiff seeks to recover damages for the breach of a statutory duty, such an action sounds in tort. See, e.g., *Curtis* v. *Loether*, 415 U.S. 189, 195, 94 S. Ct. 1005, 39 L. Ed. 2d 260 (1974) (damages action pursuant to statute sounds in tort because it defines new legal duty and authorizes courts to compensate plaintiff for injury caused by defendant's wrongful breach of duty); *Federal Deposit Ins. Corp.* v. *Citizens Bank & Trust Co.*, 592 F.2d 364, 368–69 (7th Cir.) (liability for breach of duty imposed by statute sounds in tort), cert. denied, 444 U.S. 829, 100 S. Ct. 56, 62 L. Ed. 2d 37 (1979)." (Citation omitted; internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 284 Conn. 200.

"On the other hand, [c]ontract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of [the] conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract. . . . In short, [a]n action in contract is for the breach of a duty arising out of a contract; an action in tort is for a breach of duty imposed by law." (Citations omitted;

internal quotation marks omitted.) Id.

"[I]t is well established that . . . [s]ome complaints state a cause of action in both contract and tort. . . . [O]ne cannot bring an action [under both theories, however] merely by couching a claim that one has breached a standard of care in the language of contract. . . . [T]ort claims cloaked in contractual language are, as a matter of law, not breach of contract claims. . . . To ensure that plaintiffs do not attempt to convert [tort] claims into breach of contract claims by talismanically invoking contract language in [the] complaint . . . reviewing courts may pierce the pleading veil by looking beyond the language used in the complaint to determine the true basis of the claim." (Citations omitted; internal quotation marks omitted.) *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, supra, 311 Conn. 290–91.

Here, our plenary review leads us to conclude that Canner's count one claim sounds in tort. General Statutes § 47-249 creates a statutory duty on an association to maintain, repair, and replace the common elements, "[e]xcept to the extent provided by the declaration, subsection (b) of this section or subsection (h) of section 47-255 . . . ." Canner's claim alleges that Governor's Ridge "failed, neglected, and refused to maintain its common elements," "failed to promptly repair its common elements," and "failed to promptly take responsibility for and deal with problems related to common elements" in violation of the CIOA. Therefore, we conclude that this claim sounds in tort. See *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 284 Conn. 200 ("when a plaintiff seeks to recover damages for the breach of a statutory duty, such an action sounds in tort").

We must now turn to the question of whether the present action also sounds in contract. We conclude that it does not. By way of background, Canner filed his sixth amended complaint on September 20, 2017, alleging in count one that Governor's Ridge "failed, neglected, and refused to maintain its common elements," "failed to promptly repair its common elements," and "failed to promptly take responsibility for and deal with problems related to common elements" in violation of § 47-249. There was no reference at this time to any contractual obligation codified in the declaration or any specific provision of the declaration that allegedly had been breached by Governor's Ridge.

The special defenses filed by Governor's Ridge on October 20, 2017, put Canner on notice that his claim was time barred by the statute of limitations in § 52-577. He accordingly amended count one of his sixth amended complaint to allege that Governor's Ridge violated §§ 2.6 (a) and 23.1 of the declaration[11] and § 5.2 (b) of the bylaws,[12] in addition to violating the CIOA.[13]

We conclude, however, that these amendments were insufficient to transform this claim into one sounding in breach of contract. See *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, supra, 311 Conn. 290. This is because the provisions of the governing documents relied on by Canner do not create a contractual obligation on the part of Governor's Ridge to maintain, repair, and/or replace the foundation for the 220 Unit.

Like many common interest declarations, the Governor's Ridge declaration addresses the manner in which it will repair and replace its common elements. Section 23.1 of the declaration provides in relevant part that "[a]ny portion of the Common Interest Community for which insurance is required under Article XXII which is damaged or destroyed shall be repaired or replaced promptly by the Association . . . ." Article XXII, section 22.1, titled "Maintaining Insurance," provides: "Commencing not later than the time of the first conveyance of a Unit to a person other than a Declarant, the Association shall obtain and maintain insurance required by the Act and the Declaration to the extent reasonably available." Section 2.1 defines "Act" as "[t]he Common Interest Ownership Act, Public Act 83-474, Connecticut General Statutes . . . § 47-200, et seq., Chapter 828 of the Connecticut General Statutes, as it may be amended from time to time." Additionally, § 22.2, titled "Physical Damage," provides in relevant part: "The Association shall maintain Property insurance on the Common Elements insuring against all risks of direct physical loss commonly insured against."

Because the relevant language of § 22.1 references "insurance required by the Act," we turn to the CIOA to help discern the provision's meaning. See *Morales* v. *PenTec, Inc.*, 57 Conn. App. 419, 438, 749 A.2d 47 (2000) ("[w]hen parties execute a contract that clearly refers to another document, there is an intent to make the terms and conditions of the other document a part of their agreement, as long as both parties are aware of the terms and conditions of the second document"). General Statutes § 47-255 (a) provides in relevant part: "[T]he association shall maintain, to the extent reasonably available and subject to reasonable deductibles: (1) Property insurance on the common elements . . . insuring against those risks of direct physical loss commonly insured against . . . *exclusive* of land, excavations, *foundations* and other items normally excluded from property policies . . . ." (Emphasis added.) The language of the statute makes clear that insurance for foundations need not be maintained.

In light of the foregoing, we have little difficulty concluding that the language of the declaration (and provisions of the bylaws and handbook) relied upon by Canner does not create a contractual obligation for Governor's Ridge to maintain, repair, and/or replace the foundation at the 220 Unit.[14] Rather, the governing

documents make clear that the contractual obligation for Governor's Ridge to repair and replace the common interest community is contingent on areas for which insurance is required under Article XXII of the declaration. Because it is clear that foundations are excluded areas for purposes of insurance; see General Statutes § 47-255 (a); there was no corresponding duty to maintain, repair, and/or replace the foundation at issue. Accordingly, we conclude that the court correctly determined that Canner's claim did not sound in contract and, thus, § 52-577 was the appropriate statute of limitations.

B

In conjunction with his initial statute of limitations argument, Canner makes numerous subclaims, many of which are predicated on his unsuccessful contention that the six year statute of limitations period in § 52-576 is the applicable limitation period. More specifically, Canner argues that the court erred in finding that the statute of limitations for his claim pursuant to § 47-278 started to run on April 30, 2002, when Charles and Doris purchased the unit. He argues that the claim did not "accrue" in 2002, and that any statute of limitations "did not start running until 2016." He also argues that the court erred by concluding that Governor's Ridge was not estopped from asserting its statute of limitations defense. We disagree.

"The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo. . . . The factual findings that underpin that question of law, however, will not be disturbed unless shown to be clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Jarvis* v. *Lieder*, 117 Conn. App. 129, 146, 978 A.2d 106 (2009). "The party claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous." (Internal quotation marks omitted.) *Li* v. *Yaggi*, 185 Conn. App. 691, 711–12, 198 A.3d 123 (2018). "A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The legal conclusions of the trial court will stand, however, only if they are legally and logically correct and are consistent with the facts of the case." (Internal quotation marks omitted.) *Blackwell* v. *Mahmood*, 120 Conn. App. 690, 694, 992 A.2d 1219 (2010).

Canner's first subclaim requires little discussion because his argument of accrual is misplaced for a fundamental reason—§ 52-577 is a statute of repose, not a true statute of limitations. See *State* v. *Lombardo Bros. Mason Contractors*, 307 Conn. 412, 416 n.2, 54 A.3d 1005 (2012) ("[w]hile statutes of limitation are

sometimes called statutes of repose, the former bars [a] right of action unless it is filed within a specified period of time after [an] injury occurs, [whereas] statute[s] of repose [terminate] any right of action after a specific time has elapsed, regardless of whether there has as yet been an injury" (internal quotation marks omitted)).

Section 52-577, the applicable statute, provides: "No action founded upon a tort shall be brought but within three years from the date of the *act or omission complained of*." (Emphasis added.) As this court has observed, "[§] 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs." (Internal quotation marks omitted.) *Pagan* v. *Gonzalez*, 113 Conn. App. 135, 139, 965 A.2d 582 (2009). For that reason, "[w]hen conducting an analysis under § 52-577, the only facts material to the trial court's decision . . . are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) Id. As our Supreme Court has explained, "the history of [the] legislative choice of language [contained in § 52-577] precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." *Fichera* v. *Mine Hill Corp.*, 207 Conn. 204, 212, 541 A.2d 472 (1988).

Both before this court and the trial court, Canner explicitly described the original wrong as Governor's Ridge's allowing the 220 Unit to be built on soft ground. The operative complaint also contains allegations that, prior to constructing the unit, Governor's Ridge knew that there were issues with the soil on the property where the unit is located, and that there existed a risk that settling could occur if condominium units were built on that property. We agree with the court's finding that the closing date of April 30, 2002, which was the day on which Charles and Doris came into possession of the 220 Unit and the allegedly defective foundation, was the date on which the statute of repose period began to run. This was the point latest in time the construction of the allegedly defective foundation occurred and is when Charles and Doris officially became unit owners and could bring an action pursuant to the law. Accordingly, we conclude that the court's factual findings and legal conclusions are sufficiently supported by the record, and therefore are not clearly erroneous.

Turning to Canner's next subclaim related to his statute of limitations argument—namely, that the court improperly concluded that Governor's Ridge was not estopped from asserting its statute of limitations defense—we conclude that this claim is similarly unavailing. He argues that the court improperly rejected his assertion that Governor's Ridge should be estopped

from asserting its statute of limitations defense because it allegedly acknowledged that the foundation is a common element, that it was responsible for the settling that occurred, and that it intended to repair the foundation. He further argues that he relied on those representations, and that his reliance "prevented [him] from selling [the 220 Unit] for eight years." Governor's Ridge argues that there is no evidence that Charles, Doris, or Canner were ever dissuaded from pursuing a legal claim against it or that it prevented them from obtaining information related to a potential claim. We agree with Governor's Ridge.

A claim of estoppel requires proof of two essential elements: (1) "[T]he party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief," and (2) "the other party must change its position in reliance on those facts, thereby incurring some injury." (Internal quotation marks omitted.) *TD Bank, N.A.* v. *Salce*, 175 Conn. App. 757, 767, 169 A.3d 317 (2017). "It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." (Internal quotation marks omitted.) Id.

Here, Canner's argument centers on the assertion that Canner and his parents relied on Governor's Ridge's alleged representations that it would repair the foundation. Reliance alone, however, is insufficient to sustain his burden of proof for the imposition of equitable estoppel. See *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 614–15, 830 A.2d 164 (2003).

This claim is essentially factual in nature. In rejecting the estoppel argument asserted by Canner, the court explicitly found that the evidence "overwhelming[ly] establishe[d]" that Charles, Doris, and Canner did not exercise due diligence that would have uncovered the alleged initial conduct. Similarly, the court found that there was simply no evidence that, during the applicable limitation period, Governor's Ridge, by its conduct or otherwise, did anything to induce them to refrain from filing suit. As the court aptly noted, the public offering statement made clear that the 220 Unit was to be constructed without piles and was available well before Canner, on behalf of his parents, sent South Meadow's attorney a signed contract for the unit. Moreover, there were numerous public documents available at the building department well before the unit was purchased. For example, one report from a professional engineer questioned Adeeb's foundation design and opined that it created a "risk of some long-term settlement and structural distress." On the basis of our review of the record, we conclude that the court's factual findings are not clearly erroneous and that the court properly

interpreted and applied the law to its findings of facts. The court properly concluded that the doctrine of equitable estoppel did not preclude Governor's Ridge from asserting its statute of limitations defense.[15]

C

Canner's final claim is that the court improperly concluded that his nuisance claims are barred by the statute of limitations codified in either § 52-577 or § 52-584.[16] He breaks his claim into two parts. Specifically, he argues that the court erred in finding that the alleged nuisance is permanent as opposed to temporary without (1) hearing expert testimony on the subject, and (2) affording him an opportunity to present expert testimony. The defendants argue that we should decline to review this claim because it is inadequately briefed and because Canner failed to raise or preserve it before the court. Upon our review of the record, we agree with the defendants and conclude that the first part of his claim is inadequately briefed and the second part is unpreserved. Accordingly, we decline to review this claim.

With respect to the first part of his claim, Canner appears to argue that the court, as a matter of law, erred in ruling that the nuisance alleged was permanent as opposed to temporary without benefit of expert testimony. He states in general terms that "[e]xpert testimony is required if the question involved goes beyond the field of ordinary knowledge and experience of judges and jurors," and cites two cases in support of this principle. He appears to argue that the court based its finding that the nuisance could not be abated on the testimony of Kevin Moore, the former president of Governor's Ridge, who was not an engineer or a "design professional." He then summarily states that "[w]hether or not [the 220 Unit's] foundation and settling problems can be abated is a matter for . . . expert testimony." He does not, however, cite any case law for this contention, provide relevant citations to the record, or provide analysis of the issue. As we explained previously, "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *Starboard Fairfield Development, LLC* v. *Gremp*, 195 Conn. App. 21, 31, 223 A.3d 75 (2019). Accordingly, we decline to reach the merits of the first part of his claim.

The second part of Canner's claim fares no better. "It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level." (Internal quotation marks omitted.) *McMahon* v. *Middletown*, 181 Conn. App. 68, 76,

186 A.3d 58 (2018); see also Practice Book § 60-5. "The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Citations omitted; emphasis in original; internal quotation marks omitted.) *McMahon* v. *Middletown*, supra, 76.

In the present case, Canner points us to the court's limited scheduling order, which required that "fact witness depositions related to issues regarding the statute of limitations" be completed by a certain date. Relying on this order, he contends that the court's procedures for the limited hearing on November 8 and 9, 2018, provided *only* for fact witnesses, not experts. He asserts, without support from the record, that the court indicated that the advantage of calling only fact witnesses was so the parties could avoid the expense of expert disclosure and depositions at that stage of litigation. Governor's Ridge argues that the court's limited scheduling order does not "reference or preclude the disclosure of expert witnesses." It points to the fact that the court twice modified the limited scheduling order and that the two prior versions of the order stated that "[t]he scope of the deposition may be expanded by agreement of all counsel." On August 16, 2018, the court held a hearing status conference. Governor's Ridge further argues that "the plaintiff did not identify any expert witnesses he wished to call during [that] status conference," and that he "did not . . . file a single expert witness disclosure."[17]

Our review of the record reveals that the plaintiff did not seek to introduce expert testimony at any time before or during the limited evidentiary hearing. Nor has he directed this court to any place in the record where he did so. He similarly did not raise any issue about expert witness testimony in his motion to reargue and/or to correct the judgment. To allow the plaintiff to advance this unpreserved claim on appeal would be unfair to the court and to the defendants. See, e.g., *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 730, 941 A.2d 309 (2008) ("[f]or us [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade" (internal quotation marks omitted)). We therefore decline to review this part of his claim because he failed properly to preserve this issue for appellate review.

II

AC 42982

We next address the claims made by Puteri in his appeal. As previously mentioned, Puteri claims that the court erred for the same reasons Canner asserts in the first appeal. In fact, Puteri's briefing on appeal is almost identical to that of Canner's. For purposes of judicial economy, we do not discuss Puteri's claims to the same extent we did for Canner's in part I of this opinion because Puteri's claims fail for the same legal reasons, even though the underlying facts differ slightly.

We begin by setting forth the following relevant facts, found by the trial court or otherwise undisputed, and the procedural history. This action involves property located at 105 Governor Trumbull Way, which is also a condominium unit located in the Governor's Ridge common interest community in Trumbull (105 Unit). The 105 Unit was purchased by Puteri and his late wife, Loretta G. Puteri (Puteris), on December 26, 2001, from South Meadow.

The 105 Unit was part of phase II of the Governor's Ridge common interest community. In 2000, Governor's Ridge applied to the planning and zoning commission to construct thirty-six detached units constituting phase II of the Governor's Ridge common interest community. A hearing was held on November 27, 2000, and, on January 10, 2001, the planning and zoning commission issued a special permit to Governor's Ridge to construct the units. Although the planning and zoning commission's special permit contained language related to foundation construction in light of certain soil conditions, the building department ultimately retained jurisdiction over how the foundations were constructed and whether to issue a certificate of occupancy for any particular unit.

On June 27, 2001, Governor's Ridge sold the phase II development rights to South Meadow, which had been formed by Tatangelo and Lucera to develop phase II. According to Tatangelo, South Meadow was aware at the time that the soil conditions at the phase II location presented certain challenges. As a result, South Meadow hired Adeeb Consulting on June 13, 2001, for limited engineering services regarding the design of the foundations. Its principal, Adeeb, is a geotechnical and structural engineer. On June 27, 2001, Adeeb issued a report concerning the foundations for the 105 Unit. The report was based on a boring at the location and recommended a foundation system using geo-fabric, footings, and grade beams. On July 6, 2001, the building department issued a building permit for the unit, which did not require the foundation be built on piles. Although this method of construction was criticized in a letter dated July 22, 2001, written by Herbert L. Lobdell, a professional engineer, that was copied to the building department, the construction of the unit's foundation proceeded in accordance with the plan developed by Adeeb.

On July 27, 2001, South Meadow issued a public offering statement for phase II. The statement included, among other things, architectural drawings for the various phase II unit models. The drawings showed that the foundations would be built with concrete walls and footings, not with piles. The Puteris entered into a contract to purchase the 105 Unit from South Meadow on November 13, 2001. Soon thereafter, on December 20, 2001, the building department provided the certificate of occupancy for the 105 Unit. At this time, construction of the unit was complete, and neither the building department nor any other town department had any further involvement with the unit.

On December 26, 2001, the Puteris closed on the 105 Unit. The same day, they leased the unit back to South Meadow until March 20, 2002, for use as a model home. After the lease expired, South Meadow addressed a punch list of items for the Puteris, but had no further involvement with the 105 Unit after completing those tasks.

After the Puteris moved in, as early as 2003, but no later than 2005, they began to notice cracks on the exterior and interior of the unit. When they contacted the management company for Governor's Ridge, the problems were addressed. Puteri testified, however, that the cracks would redevelop after they were fixed. He attributed these problems to settling and was aware in the years 2006, 2007, and 2008, that the settling was getting worse. Additional problems developed during this time period, including a large crack on the second floor, a crack in the basement floor, and windows and doors that would not open correctly. Puteri testified that he was not aware of significant settlement problems until he placed the 105 Unit on the market in 2012.

On June 20, 2012, an e-mail from Puteri to the management company described "the most notable defects," but explicitly stated that there were "several structural issues over the years" and "[t]his has been an ongoing issue since the house was originally built and records should show a vast number of phone calls from us pertaining to this matter and yet a permanent fix has never come."

Thereafter, between 2012 and 2016, Governor's Ridge took various steps to address the settlement, including hiring Fuller Engineering & Land Surveying, LLC, to measure settling at the unit. In mid-December, 2015, after learning that a neighbor had town records about the phase II development, Puteri's daughter, Lorraine Sando, went to the building department, the planning and zoning commission, wetlands, and other town departments to get records about the 105 Unit. Each time she verbally requested records, she received them.

On September 5, 2017, Puteri commenced this action. Like Canner, Puteri seeks to hold the defendants liable

for the alleged settling of the 105 Unit. His complaint also contains various counts against the defendants alleging negligence, nuisance, fraud, breach of contract, and violations of the CIOA. The defendants raised numerous special defenses in their respective answers to the operative complaint claiming the respective counts against them were time barred pursuant to the applicable statutes of limitations or repose. A limited evidentiary hearing on the statute of limitations defenses and matters of avoidance was held on November 8 and 9, 2018.[18]

On May 7, 2019, the court issued a memorandum of decision in which it concluded that each count against the defendants was time barred by the applicable statute of limitations and, thus, rendered judgment in favor of the defendants. On May 24, 2019, Puteri, pursuant to "Practice Book § 11-11 and/or § 11-12," filed a "motion to reargue and/or correct judgment," which was denied. The same day, Puteri appealed to this court.

A

Like Canner, Puteri first claims that the court erred by concluding that his claim brought pursuant to § 47-278 (count one of his operative complaint) was barred by the three year tort statute of limitations codified in § 52-577. He argues that his claim is contractual in nature because the legal duties alleged to have been breached stemmed from the Governor's Ridge governing documents (common interest declaration, bylaws, and handbook) and, accordingly, the six year statute of limitations set forth in § 52-576 is the appropriate limitation period.

For the same reasons and utilizing the standard of review set forth in part I A of this opinion, Puteri's arguments fail. There is no question that Puteri's count one claim sounds in tort, rather than in contract, because it is clear that he is seeking redress for a breach of a statutory duty. The language of the declaration (and provisions of the bylaws and handbook) relied upon by Puteri—which is the same language relied upon by Canner in his appeal—does not create a contractual obligation for Governor's Ridge to maintain, repair, and/or replace the foundation at the 105 Unit. Instead, the governing documents make clear that the duty for Governor's Ridge to repair and replace the common interest community is contingent on areas for which insurance is required under Article XXII of the declaration. Because it is clear that foundations are excluded areas for purposes of insurance, there was no corresponding contractual obligation to maintain, repair, and/or replace the foundation at issue. Accordingly, the court correctly determined that Puteri's claim did not sound in contract but, rather, sounded in tort. We thus conclude that the court correctly determined that § 52-577 was the appropriate statute of limitations for count one of Puteri's complaint.

With this as our backdrop, we conclude that the court correctly determined that Puteri's closing date of December 26, 2001, was the appropriate starting point for the statute of limitations period. As previously explained, § 52-577 is a statute of repose. Thus, "the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs." (Internal quotation marks omitted.) *Pagan* v. *Gonzalez*, supra, 113 Conn. App. 139.

Both before this court and the trial court, Puteri explicitly argues that the original wrong was that Governor's Ridge allowed the 105 Unit to be built on soft ground. We agree with the court that the closing date of December 26, 2001, was when the statute of repose period began to run. This is the date the Puteris officially became unit owners and could pursue an action pursuant to the law, as well as the latest date the construction of the allegedly defective foundation occurred.

We next address Puteri's subclaim that Governor's Ridge should be estopped from asserting its statute of limitations defense. Puteri argues that Governor's Ridge acknowledged that the foundation is a common element, it was responsible for the settling that occurred, and it intended to repair the foundation. He too alleges he relied on those representations.

Like Canner, Puteri failed to satisfy his burden of proving that estoppel applies in the present case. The court found that there was no evidence that during the applicable limitation period Governor's Ridge did anything to prevent Puteri from discovering facts to support a cause of action or to induce him to refrain from filing suit. There similarly is no evidence that Governor's Ridge made any promises or statements to Puteri for the purpose of misleading him about the manner in which the unit's foundation was constructed. On the basis of our review of the record, we conclude that the court's factual findings are not clearly erroneous and, under our plenary standard of review, the court properly interpreted and applied the law to its findings of facts. We therefore conclude that the court properly determined that Governor's Ridge was not estopped from maintaining its statute of limitations argument.[19]

B

As a final matter, as was the case with Canner, we similarly decline to review Puteri's claim that the court erred in ruling that his nuisance claims are barred by the applicable statute of limitations. He too specifically argues that the court erred in finding that the alleged nuisance is permanent as opposed to temporary without (1) hearing expert testimony on the subject, and (2) affording him an opportunity to present expert testimony. Like Canner, Puteri failed to adequately brief the first part of his claim. See part I C of this opinion; see also *Starboard Fairfield Development, LLC* v. *Gremp*,

supra, 195 Conn. App. 31 ("[a]nalysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly" (internal quotation marks omitted)). Puteri similarly failed to properly preserve the second part of his claim for appellate review, as he never raised the issue of expert testimony nor sought to introduce expert testimony before the trial court. Thus, the court never had a chance to address this issue now raised by Puteri. To allow Puteri to advance this unpreserved claim on appeal would be unfair to the court and to the defendants. See *Guiliano* v. *Jefferson Radiology, P.C.*, 206 Conn. App. 603, 622, 261 A.3d 140 (2021) ("[f]or us [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge" (internal quotation marks omitted)).

The judgments are affirmed.

In this opinion the other judges concurred.

[1] Although the appeals were not consolidated, we resolve both appeals in one opinion for purposes of judicial economy because the claims and factual backgrounds are nearly identical.

[2] In addition to being the plaintiff in a representative capacity as executor in the first appeal, Glen A. Canner is also the attorney of record in both appeals.

[3] The Adeeb defendants did not participate in either appeal because the plaintiffs' claims are not directed at them.

[4] The court found that "Adeeb also stated that '[b]ased on my calculations and analysis, these buildings will not undergo differential settlement. . . . I must emphasize that, in the practice of our profession, we do the best we can by providing sound engineering consultation and recommendations, based on quantitative analysis and calculations. However, we never issue any guarantee or warranty, be it expressed or implied.' "

[5] The court explained: "Notably, in a letter to [Tatangelo] related to sewer issues dated April 23, 2002, Kallmeyer acknowledged that the building department had jurisdiction over 'matters pertaining to the houses.' "

[6] For purposes of discovery, the trial court consolidated this action with the action brought against the defendants in *Puteri* v. *Governor's Ridge Association, Inc.*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X10-CV-17-6037281-S, which is the subject of the second appeal addressed in this opinion.

[7] In that motion, the plaintiff claimed that there were inaccuracies in the original memorandum of decision, such as references to incorrect docket numbers and exhibit numbers. On June 17, 2019, the court issued a corrected memorandum of decision. The corrected memorandum of decision does not contain any substantive changes.

[8] Our Supreme Court has held that "[a] declaration is an instrument recorded and executed in the same manner as a deed for the purpose of creating a common interest community. . . . [T]he declaration operates in the nature of a contract, in that it establishes the parties' rights and obligations . . . ." (Citations omitted; internal quotation marks omitted.) *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 313 n.3, 984 A.2d 676 (2009).

[9] General Statutes § 52-576 (a) provides: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section."

[10] We note that Canner originally argued before the trial court that the present action was not subject to any statute of limitations. He argued in the alternative that, if the action was in fact subject to a limitation period, § 52-576 was the applicable statute of limitations. On appeal, Canner no longer pursues the argument that this action is not subject to any statute of limitations.

[11] Section 2.6 (a) of the condominium declaration states that "[c]ommon [e]xpenses" include "[e]xpenses of administration, maintenance, repair or

replacement of the Common Elements." Section 23.1 of the declaration provides in relevant part: "Any portion of the Common Interest Community for which insurance is required under Article XXII which is damaged or destroyed shall be repaired or replaced promptly by the Association . . . ."

[12] Section 5.2 (b) of the bylaws provides in relevant part: "All maintenance and repairs of and any replacements to the Common Elements and Limited Common Elements . . . shall be made by the Executive Board and be charged . . . as a Common Expense . . . ."

[13] We recognize that an amendment to the sixth amended complaint would make it a seventh amended complaint. Despite subsequent amendments to the sixth amended complaint, the parties have referred to the operative complaint as the sixth amended complaint. We follow their lead.

[14] Canner also relies on § 2.6 (a) of the declaration and § 5.2 (b) of the bylaws; see footnotes 11 and 12 of this opinion; in addition to other declaration, bylaw, and handbook provisions he raises for the first time on appeal. A simple review of these provisions similarly reveals no duty on the part of Governor's Ridge to maintain, repair, and/or replace the foundation in question. To say more would be supererogatory.

[15] It appears that Canner makes three additional subclaims related to his statute of limitations arguments. We decline to review two of them because they are inadequately briefed, and the third fails because this court cannot review a ruling that was not in fact made. We briefly explain.

First, Canner argues in a conclusory manner that the court erred in failing to rule that reaffirmations by Governor's Ridge of its obligation to fix the unit's foundation and settling problems "restarted" the statute of limitations. In support of this assertion, Canner merely cites to one, unpublished Superior Court decision, *Advani* v. *Park Mead Condominium Assn.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-17-6032437-S (August 14, 2018), for the proposition that "an unambiguous reaffirmation of a contractual obligation is a basis on which to 'restart' the statute of limitations applicable to the original claim . . . ." Canner does not provide any legal analysis beyond that assertion and does not brief the issue properly, as applicable to a tort claim pursuant to § 52-577.

Second, Canner appears to claim that the court erred by not concluding that the continuing course of conduct doctrine tolled the statute of limitations. Once again, Canner resorts to a context and analysis free citation to *Vaccaro* v. *Shell Beach Condominium, Inc.*, supra, 169 Conn. App. 43, and a host of conclusory statements with no relevant supporting citations to the record. His brief fails to provide any meaningful analysis about the scope of the duty, if any, owed to him by Governor's Ridge in relation to the foundation pursuant to § 47-249, how that duty was related to the alleged original wrong, or how Governor's Ridge allegedly continued to breach that duty within the meaning of our case law.

"We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Haggerty* v. *Williams*, 84 Conn. App. 675, 684, 855 A.2d 264 (2004). Because Canner has not adequately briefed these subclaims beyond his mere abstract legal assertions, we decline to review them.

Last, it appears that Canner argues that the court erred in finding that Governor's Ridge reasonably exercised its discretion in deciding not to repair the foundation in question. Upon our review of the court's memorandum of decision, no such issue was considered nor was such ruling made. Because we cannot opine on a court's ruling that did not occur, this claim fails. See, e.g., *Lane* v. *Cashman*, 179 Conn. App. 394, 416, 180 A.3d 13 (2018) ("[w]e are unable to review a ruling that was not made"); *State* v. *McLaughlin*, 135 Conn. App. 193, 202, 41 A.3d 694 ("[w]e cannot pass on the correctness of a trial court ruling that was never made" (internal quotation marks omitted)), cert. denied, 307 Conn. 904, 53 A.3d 219 (2012).

[16] The nuisance claims are alleged in count three against Governor's Ridge, count six against the South Meadow defendants, and count twelve against the town defendants.

[17] The South Meadow defendants and the town defendants advance similar arguments in their briefs to this court.

[18] See footnote 6 of this opinion.

[19] Puteri similarly raises subclaims that the court (1) erred in failing to rule that reaffirmations by Governor's Ridge of its obligation to fix the unit's foundation and settling problems "restarted" the statute of limitations, (2) improperly concluded that the statute of limitations was not tolled by the

continuing course of conduct doctrine, and (3) erred in finding that Governor's Ridge reasonably exercised its discretion in deciding not to repair the foundation in question. These subclaims fail for the same reasons that we rejected the same subclaims raised by Canner in the first appeal, as the first two are inadequately briefed and the third is premised on a ruling that was never made. See footnote 15 of this opinion. We need say no more.

––––––––––––––––––––––––––––––